In re Estate. of John G. Sibert, J. F. Schaaf, Claimant.

No. 43037.

October 23, 1935.

Rehearing Denied February 15, 1936.

Baron & Bolton, for appellants.

Griffin & Griffin, for appellee.

Albert, J.—From the claim and amendments thereto we glean the following facts pleaded: That the Humphrey Steam Dye Works was a corporation, and in January 1920, J. G. Sibert (the deceased) became the owner of the majority of the stock of said corporation. That he had had no experience in this line of business, and the claimant herein, who was an experienced man in the dye business, was employed by Sibert to conduct the dye business. That in July, 1920, the claimant and Sibert entered into an oral agreement, by the terms of which Sibert transferred to the claimant ten shares of stock in the corporation at an agreed price of $1,000, and it was further agreed that said stock was to be paid for out of the future dividends to be declared on said stock, and the said stock was duly issued to the claimant and fully paid for by the 31st of December, 1925. That certain bonuses and additional salary were from time to time granted to this claimant by the corporation, and that Sibert continued to

972

draw the dividends declared by the said corporation on the said ten shares of stock and also collected from the corporation the said bonuses and additional salary payable to the claimant. That during all the time Sibert, who was president and general managing officer of the corporation and had charge of and kept the books therefor, concealed from this claimant at all times prior to Sibert's death the fact that dividends had been declared on said stock and that bonuses had been awarded the claimant. That a confidential and fiduciary relationship existed between this claimant and Sibert up until the time of the death of Sibert. That Sibert was the majority stockholder, president, and managing officer of the corporation, and as such he was the employer of the claimant. That he was the confidential business and financial adviser of this claimant, and claimant reposed implicit confidence in the said Sibert and believed at all times that Sibert was acting fairly with him and that no advantage would be taken of him by the said Sibert. That the claimant borrowed some money from Sibert and his stock was pledged as security therefor. That in October, 1928, Sibert sold the assets of the corporation, his corporation stock, and also the ten shares of stock belonging to this claimant, to the Mid-Continent Laundry Company, and that Sibert also liquidated the assets of the corporation, receiving a gross total therefor in the sum of $100,731.30, and that Sibert has never accounted to this claimant for his share of said funds, and also that the outstanding accounts of the corporation were not included in the sale, and that Sibert retained said accounts and still held the same at the time of his death. That Sibert made collections on said accounts from time to time, and never accounted to the claimant for his proportionate share thereof. That the exact amount of the same is unknown to this claimant, and he asks that Sibert (or his executors) be called upon to account to this claimant for all the different amounts hereinbefore specified, and that he have interest thereon, and that claimant's claim be allowed in the sum of $6,717, or such other sum as shall be found to be due this claimant after a complete accounting has been taken, and that the cause be transferred to equity and tried as an equitable proceeding, and that he be granted such relief as may be found just and equitable.

On the 3d day of December, 1934, on motion of the claimant, the cause was transferred to equity, and the executors appeal from this order.

The claimant pleads that a confidential and fiduciary relation existed between the claimant and Sibert. The question at this point is whether or not the existence of such relation warranted the court in transferring the cause to equity. The theory of the claimant is that, as to the numerous items claimed herein, Sibert was in fact a trustee of the funds, and, that being true, he is bound to account, and therefore equity has jurisdiction.

As to the fiduciary relation, the general rule is stated in 1 C. J. p. 621, section 68, as follows:

"Courts of equity have jurisdiction over all trusts for the purpose of compelling an accounting, and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction whenever the duty arising out of such relation rests upon one of the parties to render an account to the other. This rule is not restricted merely to express trustees, but applies equally to trusts created by implication of law; * * * In such cases it is not necessary that the accounts should be mutual or complicated* * *."

See, also, Dickinson v. Stevenson, 142 Iowa 567, 120 N. W. 324, 325, wherein this same question is referred to, and it is said:

"As illustrations of this, courts of equity will assume jurisdiction and grant relief because of the relations existing between the parties, such as trust or confidence. * * * Equity also imposes a higher duty than law with regard to the disclosure of matters of which one party is ignorant. * * * And as a general rule it may be said that fraud in equity includes all acts, omissions, and concealments which involve a breach of either legal or equitable duty, trust, or confidence, justly reposed."

It necessarily follows, therefore, that, under the allegations of this claim as to trust and confidential relation, equity has jurisdiction in such matters, and the district court was warranted in transferring the matter from law to equity as it did.

We do not discuss the other questions involved here, because we think what has already been said shows that the court had a ground on which the case was properly transferable to equity. The action of the district court was right, and it is affirmed.— Affirmed.

KINTZINGER, C. J., and MITCHELL, ANDERSON, DONEGAN, POWERS, PARSONS, and HAMILTON, JJ., concur.